NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JULANEY SOBOLESKI | : | |
| Plaintiff, | : | Civil No. 14-3156 (RBK) |
| v. | : | **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on an appeal filed by Plaintiff Julaney Soboleski ("Plaintiff") from a decision of the Acting Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner"), denying Plaintiff disability insurance benefits ("DIB"). The Court has jurisdiction to decide this appeal pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). For the reasons expressed herein, the Court will vacate the decision of the Commissioner and remand the matter to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Opinion.

I.  BACKGROUND

A.  Procedural History

On January 7, 2011, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging a disability onset date of December 1, 2009. Tr. 14, 63. Plaintiff alleged disability due to depression, anxiety, irritable bowel syndrome ("IBS"), and arthritis. Tr. 63. Plaintiff's initial claim was denied on July 26, 2011. Tr. 71-72. Plaintiff subsequently filed

1

a Request for Reconsideration on September 20, 2011, Tr. 91, which was denied on November 10, 2011.  Tr. 92.  Thereafter, Plaintiff filed a Request for Hearing by an Administrative Law Judge.  Tr. 95-96.  This hearing took place on November 1, 2012 before ALJ Christopher K. Bullard.  Tr. 33-62.  On November 26, 2012, the ALJ issued a decision finding Plaintiff not disabled and thus denying benefits.  Tr. 32.  Plaintiff then filed a Request for Review by the Appeals Council, Tr. 10, which was denied on March 7, 2014, Tr. 5.  This appeal followed.

### B.  Plaintiff's Physical Condition and Medical History

The Court will limit its discussion to Plaintiff's physical impairments that are at issue in this appeal.[1]

#### 1.  Irritable Bowel Syndrome

The first evidence of record concerning Plaintiff's IBS is her office visit with Dr. John Laratta on March 30, 2010, where she complained of IBS "flare ups" and was diagnosed with "irritable bowel."  Tr. 291.  Virtua Hospital records indicate that Plaintiff was treated there and was diagnosed with abdominal pain and mild pancreatitis on June 29, 2011.  Tr. 314.  On June 30, 2011, Plaintiff attended a consultative orthopedic medical examination with Dr. Nithyashuba Khona.  Tr. 319.  Dr. Khona did not have any medical records available for review, but rather listed the Plaintiff as the medical source.  Tr. 319, 321.  Dr. Khona diagnosed her with degenerative joint disease ("DJD"), a history of low back pain and left knee pain, IBS, and depression/anxiety.  Tr. 321.  Plaintiff underwent a colonoscopy on July 18, 2011, which revealed a Vascular Malformation/AVM and internal hemorrhoids, but an "otherwise normal colon."  Tr. 326.

---

[1] Plaintiff does not contest the Commissioner's determinations regarding her mental impairments.

Plaintiff treated with Dr. Nishith Gami from July 5, 2011 to October 10, 2012. On July 5, 2011, Dr. Gami noted that Plaintiff "hasn't been seen in a while," and that she had recently been treated in the hospital emergency room for diarrhea. Tr. 381. At that visit Plaintiff denied any abdominal pain, but stated that she had "loose BM," some nausea and no appetite, and had taken Immodium once. Id. Dr. Gami diagnosed her with diarrhea, advised her to drink lots of fluids, and also recommended a colonoscopy. Id. Plaintiff next saw Dr. Gami on December 23, 2011, complaining of abdominal pain, upset stomach, nausea, and loose stools for the past two days. Tr. 382. Dr. Gami diagnosed her with nausea, prescribed her Pepcid and Phenergan as needed, and advised her to take a liquid diet. Id. He also prescribed Klonopin for her anxiety. Id. On February 24, 2012, Plaintiff visited Dr. Gami due to cough and congestion, but reported that her stomach symptoms had been better with Pepcid. Tr. 383. She was again diagnosed with nausea. Id. On March 28, 2012, Plaintiff saw Dr. Gami complaining of intermittent stomach pain, but she had "no BM problem." Tr. 384. She reported that she would feel pain when she got anxious, but the symptoms would go away when she calmed down. Id. Plaintiff also reported that certain foods made her pain come back. Id. She was taking Pepcid three to four days per week. Id. Dr. Gami diagnosed her with flatulence and nausea, prescribed Pepcid and Phenergan, and advised her to watch her diet. Id.

Plaintiff followed up with Dr. Gami on May 9, 2012. Tr. 385. She reported that she was "doing okay," and had intermittent symptoms with her stomach which included "loose BM and nausea." Id. Dr. Gami diagnosed Plaintiff with diarrhea, nausea, and IBS. Id. He advised her to take Prilosec, fiber, and to watch her diet. Id. Plaintiff returned on June 28, 2012, complaining that she was having "stomach gurgling" and some nausea. Tr. 420. Plaintiff reported that the symptoms usually went away upon taking Klonopin. Id. Plaintiff was also taking Pepcid. Id.

3

She was diagnosed with nausea and IBS, and again advised to take Prilosec, fiber, and to watch her diet. Id. On August 10, 2012, Plaintiff was examined by Dr. Gami for intermittent stomach bloating. Tr. 421. She was diagnosed with flatulence and IBS, and again advised to take Prilosec, fiber, and to watch her diet. Id. Plaintiff saw Dr. Gami for the last time on October 10, 2012, complaining that she was "not feeling well for 2 weeks" and that she was depressed. Tr. 425. Dr. Gami again diagnosed her with flatulence and IBS, and gave her the same advice concerning Prilosec, fiber, and her diet. Id.

Dr. Gami completed an Irritable Bowel Syndrome Medical Source Statement on May 10, 2012. Tr. 377-80. Dr. Gami listed Plaintiff's symptoms as: chronic diarrhea, abdominal pain and cramping, vomiting, abdominal distention, nausea, malaise, and fatigue. Tr. 377. He characterized her pain as "intermittent," "generalized, severe pain" caused by stress, which would come on suddenly and last from two to five days. Id. He reported that Plaintiff responded to Pepcid, Prilosec, and anti-anxiety medications. Tr. 378. Dr. Gami indicated that Plaintiff's impairment lasted or could be expected to last at least twelve months. Id. Dr. Gami noted that Plaintiff would need to take three to four unscheduled restroom breaks of 30 minutes each per day, with no advance notice. Tr. 379. He indicated that Plaintiff was "incapable of even 'low stress' work," id., but that she had "good days" and "bad days," Tr. 380. Dr. Gami estimated that Plaintiff would be absent for more than four days per month. Id.

Dr. Scott Modena of The Gastroenterology Group, P.A., saw Plaintiff on July 6, 2011 for evaluation of nausea, vomiting and diarrhea that had recently occurred. Tr. 330. At this visit, Plaintiff reported that she "has been getting better and is about 90% improved." Id. She no longer had any nausea, vomiting, or diarrhea. Id. Dr. Modena conclusded that Plaintiff had suffered from a viral gastroenteritis. Tr. 331.

4

On September 1, 2012, Plaintiff's Counselor at the Community Counseling Center of Moorestown completed a Medical Opinion regarding Plaintiff's ability to do work-related activities. Tr. 395-98. Of relevance to Plaintiff's IBS, the Counselor reported that Plaintiff occasionally needed to take a break during their 50-minute sessions due to IBS symptoms, and that she missed four visits due to her "symptom flare-ups." Tr. 396.

At the hearing before the ALJ, Plaintiff testified that she had been laid off from Walmart in December 2009, and that shortly after being laid off, her symptoms worsened. Tr. 40-41. She testified that when she gets anxious, she'll have IBS symptoms including "cramping, terrible pain in my stomach," and that she has to get to the bathroom quickly otherwise she will have a "mishap" and have to go home and clean herself up. Tr. 43. She testified that she has had accidents in public and at work in the past. Id. Plaintiff explained that when her symptoms flare up she needs to be in the bathroom three to four times a day for 20 to 40 minutes at a time, that she has "no more than three minutes" to make it to the bathroom once she starts feeling symptoms, and that after these bouts she feels physically drained and weak. Tr. 47-48.

A March 9, 2011 Adult Function Report completed by Plaintiff reveals that Plaintiff goes out every day, including going shopping for one to three hours at a time. Tr. 198. Plaintiff's daughter completed a Third Party Adult Function Report on March 10, 2011, in which she indicated that Plaintiff runs errands, goes shopping at least two days a week for one hour and goes to the post office and the thrift store on a regular basis, but that her IBS symptoms "interrupt her daily activities and prevent her from living a normal life." Tr. 204-212.

### 2. Degenerative Joint Disease

At Plaintiff's June 30, 2011 consultative orthopedic medical examination with Dr. Khona, he diagnosed her with DJD. Tr. 321. He observed that Plaintiff's gait was normal, she

5

could squat, could rise from the chair without difficulty, used no medical assisting devices, had a full range of motion of the hips, ankles and knees, no joint effusion, inflammation or instability, and that the straight leg test was negative.  Tr. 320.  That same day Plaintiff had an imaging study of both knees done, where the impression was an "essentially normal examination of the knees."  Tr. 324.  On July 25, 2011, Plaintiff underwent a state agency medical consultation with Dr. Harpreet Khurana, who determined that her arthritis (DJD) was non-severe.  Tr. 69.  Throughout her treatment with Dr. Gami, he consistently indicated that Plaintiff had no deformities in her extremities and that her gait was normal.  Tr. 381-85, 419-25.  In the Third Party Adult Function Report completed by Plaintiff's daughter, she indicated that Plaintiff cleans, does laundry, empties litter pans, cooks, does light yard work, and enjoys gardening.  Tr. 207-09.  Plaintiff testified that she cleans her house, cares for her pets, does the laundry, goes to the grocery store and runs errands.  Tr. 52.

### C. Plaintiff's Work History

Plaintiff has past relevant work as a cashier/sales associate and a housekeeper.  Tr. 84-85.  She last worked at Walmart as a cashier until she was laid off in December of 2009.  Tr. 40-41.

## II. LEGAL STANDARDS

### A. Standard of Review of the Commissioner's Decision

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  If the Commissioner's determination is supported by

substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Masanari, 247 F.3d 34, 38 (3d Cir. 2001). A district court may not weigh the evidence "or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.") The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schoenwolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)). Furthermore, evidence is not substantial if it constitutes "not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).

**B. The Five-Step Disability Inquiry**

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled, and therefore eligible for DIB benefits. 20 C.F.R. § 404.1520(a)(4); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is

currently engaging in any "substantial gainful activity." Such work activity bars the receipt of benefits. 20 C.F.R. § 404.1520(b). The Commissioner then ascertains whether the claimant is suffering from a medically determinable severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have such a severe impairment that limits his ability to do basic work activities, the claim will be denied. Id. If the Commissioner finds that the claimant's condition is severe, the Commissioner moves to the third step and determines whether the impairment meets or equals the severity of a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, then it is presumed that the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would enable the claimant to return to his "past relevant work." 20 C.F.R. § 404.1520(f). If the Commissioner finds the claimant unable to resume past relevant work, in the fifth and final step, the Commissioner determines whether the claimant can adjust to other work. If the claimant has the capacity to perform other work available in significant numbers in the national economy, based upon factors such as the claimant's age, education and work experience, the claimant will be found not disabled. 20 C.F.R. § 404.1520(g). If the claimant cannot make an adjustment to other work, he will be found to be disabled. Id.

### III.   DISCUSSION

#### A.  The ALJ's Decision

After determining that Plaintiff has not engaged in substantial gainful activity since the alleged onset date in step one, the ALJ found that Plaintiff had the following severe impairments: affective disorder and generalized anxiety disorder. Tr. 16. He found all other alleged

impairments to be non-severe.  Id.  Regarding Plaintiff's IBS and DJD specifically, the ALJ opined that they were non-severe because "the record does not support a conclusion that they caused significant vocationally relevant limitations."  Id.

The ALJ discussed the record concerning Plaintiff's IBS and concluded that Plaintiff did not treat consistently for this impairment, and that her IBS did not impact her ability to perform sustained work related activities to the extent that she maintained.  Tr. 19.  He first noted that Plaintiff's treating physician, Dr. Gami, believed that her IBS was a mental condition.  Tr. 17, 19.  He acknowledged Plaintiff's testimony concerning her need to be near a bathroom, the frequency and duration of restroom breaks she would need, and her inability to control her symptoms.  Tr. 17.  He noted that Plaintiff first complained about her IBS on March 30, 2010, at which time Dr. Larratta diagnosed her with IBS.  Id.  He referenced her visit to Virtua Hospital in June 2011, her consultative exam with Dr. Khona that same month, and her exam with Dr. Modena in July 2011.  Id.  He discussed her visits with Dr. Gami from July 2011 to October 2012.  Tr. 17-18.  The ALJ noted the July 18, 2011 colonoscopy that showed an "otherwise normal colon."  Tr. 18.  He also noted the "absence of treatment with traditional IBS medications."  Tr. 19.

The ALJ assigned little weight to Dr. Gami's opinion that Plaintiff would be absent for more than four days per month due to her IBS and that she was unable to perform low stress work because he found it to be inconsistent with the record, and because Dr. Gami did not specialize in gastroenterology.  Id.

The ALJ also found Plaintiff's DJD to be non-severe. Tr. 20.  The ALJ relied heavily on Dr. Khona's evaluation and Plaintiff's normal imaging study.  Id.  He noted that Dr. Gami's examinations were consistent with Dr. Khona's findings.  Id.  He also relied on the Third Party

9

Adult Function Report completed by Plaintiff's daughter.  Id.  The ALJ determined that Plaintiff's DJD "is not a medically determinable impairment due to the absence of signs and laboratory findings."  Id.

At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 21.  Before moving to step four, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasionally relate to co-workers, supervisors and the general public and perform simple, routine tasks requiring simple instructions."  Tr. 23.  The ALJ opined that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.  The ALJ went on to discuss Plaintiff's various mental conditions in explaining how he arrived at the above RFC.  Tr. 23-31.  At step five, the ALJ concluded that Plaintiff was capable of performing past relevant work as a cleaner/housekeeper, and thus she was not disabled.  Tr. 31.

### B. Analysis

Plaintiff presents three arguments on appeal of the Commissioner's final decision.  First, Plaintiff argues that the ALJ erred in failing to find her IBS to be severe at step two.  She next argues that the ALJ erred in failing to consider any limitations secondary to her IBS in the formulation of Plaintiff's RFC.  Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff's DJD was non-severe and/or not medically determinable.  The Court will address these arguments in turn.

### 1. Substantial evidence supports the ALJ's conclusion that Plaintiff's IBS was not severe.

An impairment is considered severe if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521; SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Basic work activities means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). With respect to physical functioning, such basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking. Id.; see also SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985). An impairment is not severe if it is a slight abnormality that has "no more than a minimal effect on the ability to do basic work activities." SSR 96-3p at *1. Any doubt as to whether the plaintiff has demonstrated something beyond such a slight abnormality must be resolved in favor of the applicant. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

The ALJ's determination that Plaintiff's IBS was non-severe is supported by substantial evidence. The record supports the ALJ's finding that Plaintiff did not treat consistently for her IBS. Plaintiff alleges a disability onset date of December 1, 2009, yet Plaintiff saw Dr. Gami only eight times from July 5, 2011 to October 10, 2012; before that, she had not seen a doctor concerning her IBS since her visit with Dr. Laratta on March 30, 2010. Plaintiff went to the hospital for stomach pain on only one occasion. Furthermore, Dr. Gami's treatment notes indicate that Plaintiff's IBS was responsive to medications. Even without the ALJ's reliance on his interpretation of Plaintiff's colonoscopy results as "normal," or his lay opinion that Plaintiff was not treated with "traditional IBS medications," substantial evidence still supports a finding that Plaintiff's impairment was not severe.[2] There is no doubt that Plaintiff's IBS had some

---

[2] Plaintiff argues that the ALJ erred in relying on his own lay medical opinion in interpreting her colonoscopy and opining that her treatment was not traditional IBS treatment. This Court agrees that an ALJ should not substitute his lay opinion for the medical opinion of experts. Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence."); see also Witkowski v. Colvin, 999 F. Supp. 2d 764, 774

physical effects on her.  But the medical evidence in this case does not support a finding that Plaintiff's IBS limited her ability to do basic work activities, as listed in the regulations.  Indeed, Plaintiff's own testimony concerning her daily activities reveals as much.

Moreover, the ALJ did not err in assigning little weight to Dr. Gami's opinion relating to Plaintiff's vocational limitations.  Opinions regarding a plaintiff's ability to work are administrative findings reserved to the Commissioner; "even when offered by a treating source, they can never be entitled to controlling weight or given special significance."  SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).  Still, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).  Medical opinions must be evaluated according to the factors set forth in the regulations.  20 C.F.R. § 404.1527(c).  These factors are the examining relationship, treating relationship, length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and the specialization of the physician.  20 C.F.R. § 404.1527(d).

The ALJ gave little weight to Dr. Gami's opinion because the medical evidence, including Dr. Gami's own treatment notes, the notes of other physicians, and hospital records did not support his determination that Plaintiff could not even perform low stress work due to her IBS.  Though Dr. Gami is Plaintiff's treating physician, the record shows only intermittent treatment for IBS "flare ups," which Dr. Gami himself indicated were responsive to medication.  Furthermore, Dr. Gami's specialization is in internal medicine, not gastroenterology.  When

---

(M.D. Pa. 2014) (finding an ALJ improperly relied on her own lay opinion in rejecting subjective complaints of pain).  Nonetheless, the ALJ's determination is still supported by substantial evidence.

Plaintiff did see a gastroenterologist, he noted that Plaintiff had improved 90 percent and that she had suffered from viral gastroenteritis. Thus, the ALJ did not err in assigning Dr. Gami's opinion little weight, and his decision that Plaintiff's IBS was non-severe is supported by substantial evidence.

### 2. The ALJ erred in failing to consider the limitations secondary to Plaintiff's IBS in formulating her RFC.

Despite the ALJ's finding that Plaintiff's IBS was non-severe at step two, he was still required to consider the symptoms of her IBS in formulating Plaintiff's RFC. 20 C.F.R. §§ 404.1529 & 404.1545; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); Shannon v. Astrue, No. 4:11-CV-00289, 2012 WL 1205816, at *10 (M.D. Pa. Apr. 11, 2012) ("The Social Security regulations direct the administrative law judge to consider whether there are any medically determinable impairments and then, when setting a claimant's residual functional capacity, to consider the symptoms of both medically determinable severe and non-severe impairments.") The ALJ determined that Plaintiff's IBS was non-severe at step two because it did not cause significant vocationally relevant limitations—not because it was not medically determinable. The ALJ was thus required to consider the symptoms related to Plaintiff's IBS in formulating her RFC, which he failed to do entirely. For this reason the ALJ erred, and the finding of the Commissioner must be remanded to the ALJ to consider Plaintiff's limitations secondary to her IBS in formulating Plaintiff's RFC.

### 3. Substantial evidence supports the ALJ's determination that Plaintiff's DJD was not severe.

Plaintiff argues that to the extent the ALJ ruled that Plaintiff's DJD was not a medically determinable impairment, the ALJ erred. She maintains that it is unclear whether the ALJ

13

determined that Plaintiff's DJD was non-severe or was not medically determinable.[3]  However, even if the ALJ incorrectly determined that Plaintiff's DJD was not medically determinable, the error was harmless because this Court finds that substantial evidence supports the conclusion that Plaintiff's DJD was not severe.

For an impairment to be severe, it must be both medically determinable and severe.  20 C.F.R. § 404.1520.  A "medically determinable" impairment is one that is supported by "medical signs and laboratory findings," which are "established by medically acceptable clinical or laboratory diagnostic techniques."  20 C.F.R. § 404.1529(b).  As discussed above, see supra, Section III(B)(1), an impairment is considered severe if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. § 404.1521; SSR 96-3p at *1.  Here, the ALJ relied upon Plaintiff's physical examination by Dr. Khona that revealed Plaintiff's ability to sit, stand, walk, and perform other "basic work activities" as listed in the regulations without difficulty.  He also relied on Dr. Gami's treatment notes, which were consistent with Dr. Khona's findings.  The ALJ considered the normal imaging study of Plaintiff's knees, as well as the Third Party Adult Function Report completed by Plaintiff's daughter that indicated Plaintiff's ability to perform chores such as preparing meals, cleaning, doing laundry, taking care of pets, and performing yard work.  Other evidence of record also supports a finding that Plaintiff's DJD was non-severe because it did not cause relevant vocational limitations, such as Dr. Khurana's conclusion that the impairment was non-severe, as well as Plaintiff's own testimony concerning

---

[3] The ALJ stated that, other than Plaintiff's affective disorder and generalized anxiety disorder, he found all other impairments alleged and found in the record to be non-severe because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations. . . More specifically, although the claimant alleges disability due to . . . degenerative joint disease, the record does not support a conclusion that [it] caused significant vocationally relevant limitations.
Tr. 16.  However, the ALJ subsequently stated that Plaintiff's DJD "is not a medically determinable impairment due to the absence of signs and laboratory findings."  Tr. 20.

her performance of certain daily activities.  Plaintiff argues that her DJD resulted in continuous exertional functional limitations, but the pages she cites from the record mostly pre-date the alleged onset date and do not indicate any functional limitations as far as the Court can see. Therefore, substantial evidence supports the conclusion that Plaintiff's DJD was not severe.

## IV.   CONCLUSION

The Court finds remand appropriate.  Out of Plaintiff's arguments, the Court finds only the second persuasive—that the ALJ erred in not considering Plaintiff's physical symptoms stemming from her IBS in formulating her RFC.  The final decision of the Commissioner is therefore **VACATED** and the case is **REMANDED** for further proceedings consistent with this Opinion.  An accompanying Order shall issue.


Dated:  5/27/2015                                            s/ Robert B. Kugler
                                                                                                    ROBERT B. KUGLER
                                                                                                    United States District Judge